UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRIAN PATRICK STREET,

    Plaintiff,

v.                                                           Case No. 5:16cv4-MW-CJK

WARDEN ENGLISH, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

This prisoner civil rights case, brought pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), is before the court on the Individual-Capacity Defendants' Consolidated Motion to Dismiss (doc. 68), to which plaintiff twice responded in opposition (docs. 70, 71). The matter is referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the parties' submissions and the relevant law, the undersigned recommends the motion be granted and plaintiff's claims dismissed for failure to exhaust administrative remedies.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate of the Federal Bureau of Prisons ("BOP"), currently confined at Federal Correctional Institution

("F.C.I.") Fairton. At the time of the events giving rise to this lawsuit, plaintiff was confined at F.C.I. Mariana. On November 1, 2017, plaintiff filed a third amended complaint (doc. 33), naming as defendants 6 current or former employees of F.C.I. Marianna – Nicole English, former Warden; William Mackelburg, former Associate Warden; Steven Rivera, Lieutenant; Stephanie Rush, Chief Psychologist; Melissa Land, Sex Offender Program Specialist; and Joseph Sims, Correctional Officer. Plaintiff claims defendants harassed, threatened, and retaliated against him for complaining about staff misconduct and filing grievances. Plaintiff says defendants assaulted him; destroyed his personal property, including hundreds of photographs; placed him in a special housing unit; had him terminated from his job at Unicor; and transferred him to a facility where he would not be safe. Plaintiff asserts claims under the First, Eighth, and Fourteenth Amendments, seeking damages and equitable relief.

## DISCUSSION

Defendants seek dismissal of plaintiff's claims, arguing plaintiff failed to exhaust his administrative remedies. According to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The provision applies to both state and federal inmates. *See Porter*

*v. Nussle*, 534 U.S. 516, 524 (2002) (holding that "federal prisoners suing under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit"); *see also Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir. 1998) (applying PLRA's exhaustion requirement to *Bivens* action). It also applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *See Porter*, 534 U.S. at 524. And exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *See Booth v. Churner*, 532 U.S. 731, 734 (2001).

The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See id.* at 741 n.6; *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required."). Indeed, exhaustion of all available administrative remedies is a mandatory pre-condition to suit. *See Booth*, 532 U.S. at 739; *see also Porter*, 534 U.S. at 524-25 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

Moreover, exhaustion must be proper. *See, e.g., Woodford v. Ngo*, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. The court must dismiss an action if satisfied the plaintiff failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the PLRA. The Eleventh Circuit explained that the defense of failure to exhaust should be treated as a matter in abatement. *Id*. at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves 2 steps. *See Turner*, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant[s'] motion to dismiss and those in the plaintiff's

response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. (*citing Bryant*, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. (*citing Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

As defendants set forth in their motion, the BOP has a 4-step administrative remedy process for resolving grievances by inmates. *See* 28 C.F.R. § 542.10, *et seq*. "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." *Id.* at § 542.10(a). "If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the BOP will refer the inmate to the appropriate statutorily-mandated procedures." *Id*. at § 542.10(c).

At the first step of the process, an inmate is to informally present his complaint to institutional staff, and staff are to attempt to resolve the matter. *Id.* at § 542.13(a). If the matter cannot be resolved informally, the inmate must submit a formal written Administrative Remedy Request to the warden within 20 days of the date on which the basis for the request occurred. *Id.* at § 542.14(a). The warden should respond to the inmate's complaint within 20 calendar days. *Id.* at § 542.18. If an inmate is dissatisfied with the warden's response, he may appeal to the Regional Director within 20 calendar days. *Id.* at § 542.15(a). If the response of the Regional Director is unsatisfactory, the inmate may appeal to the Bureau's Central Office within 30 days of the Regional Director's response. *Id.* If a submission is rejected, it is returned to the inmate, and the inmate is provided a written notice explaining the reason for the rejection. *Id.* at § 542.17(b).

An exception is made for appeals of Discipline Hearing Officer (DHO) decisions, which are first raised directly to the Regional Office and then to the Central Office. *Id.* at § 542.14(d)(2). Another exception exists for "sensitive issues." *Id.* at § 542.14(d)(1). "If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director." *Id.* "If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted.

Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request." *Id.* "The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden." *Id.* An inmate has not exhausted his administrative remedies until his claims have been denied at all levels – *i.e.*, rejected by the Bureau's Central Office. *Id.* at § 452.15(a).

In connection with the instant motion, the BOP reviewed all administrative complaints plaintiff filed during the relevant period, January 2014 through February 2016. Although plaintiff filed multiple complaints during that time, he did not exhaust his administrative remedies with regard to any of them. Plaintiff's first complaint, number 842811, was filed on November 19, 2015, and rejected the day it was received because plaintiff did not attach a copy of the incident report at issue. Plaintiff took no further action as to that complaint. Plaintiff's second complaint, number 845255, also was rejected the day it was received, December 11, 2015, because it was untimely. Again, plaintiff took no further action as to the complaint. The same is true of the third complaint, number 846748, which was denied on January 13, 2016, approximately 2 weeks after it was received.

The next complaint, number 847078, involved a DHO hearing. Plaintiff attempted to file the complaint directly with the Regional Office, but the request was rejected shortly after it was received, on December 31, 2015, because it did not

satisfy the relevant requirements. More than a month after the request was rejected, on February 9, 2016, plaintiff resubmitted it to the Regional Office. It was rejected the following day because plaintiff did not include a copy of the DHO report or otherwise identify the charges and DHO action he was appealing. Plaintiff took no further action on the complaint.

Plaintiff also attempted to file complaint number 847540 directly with the Regional Office. The request was rejected the day after it was received because it did not involve a sensitive issue. Once again, plaintiff took no further action. The same circumstance occurred with respect to complaint numbers 847541 and 844822. Plaintiff filed requests directly with the Regional Office. They were denied either the day of or day after receipt because the complaints did not involve a sensitive issue. Plaintiff took no further action on these complaints.

Plaintiff does not contest any of the facts defendants set forth regarding the grievances he filed. Instead, he points out that he is not schooled in the law or familiar with civil procedure and seeks leniency on those grounds. He also suggests he did not follow through with the grievance process out of fear of further retaliation. Plaintiff's arguments are not persuasive. Lack of legal knowledge or education does not excuse compliance with the grievance process. In addition, the BOP grievance process allows grievances to be filed directly with the Regional Director when the inmate fears reprisal. *See* 28 C.F.R. § 542.14. Plaintiff apparently was aware of that

fact, as he repeatedly requested to forgo filing at the institutional level and instead file directly with the Regional Director.  Moreover, the assertion plaintiff feared retaliation is belied by the fact that he continued to be an active filer of grievances. Plaintiff's third amended complaint must be dismissed.[1]

Accordingly, it is respectfully RECOMMENDED:

1.   That the Individual-Capacity Defendants' Consolidated Motion to Dismiss (doc. 68) be GRANTED and plaintiff's claims DISMISSED for failure to exhaust the administrative remedy process.

2.   That the clerk be directed to close the file.

At Pensacola, Florida, this 20th day of December, 2018.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] Defendants also seek dismissal on the basis that plaintiff's claims, if allowed to proceed, would require an extension of the *Bivens* doctrine to claims brought under the First and Fifth Amendments, rather than only the Eighth Amendment.  Defendants further argue all defendants are entitled to qualified immunity.  The undersigned need not address the additional arguments in light of the finding that plaintiff's claims must be dismissed based on plaintiff's failure to properly exhaust his administrative remedies.

Case No. 5:16cv4-MW-CJK

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.   A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No. 5:16cv4-MW-CJK